UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:09-CR-121-KKC-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| BRIAN CHRISTOPHER SIMS, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, *see* DE #40, considers reported violations of supervised release conditions by Defendant, Brian Christopher Sims. The record reflects that this District convicted Sims of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), in March 2010. Judge Caldwell sentenced Sims to 63 months of imprisonment, followed by a two-year term of supervised release. Sims began his supervised release term on June 6, 2014.

The United States Probation Office (USPO) issued a Supervised Release Violation Report on December 29, 2014, and secured a summons from the District Judge on December 30, 2014. DE #35 (Order). Defendant appeared before the undersigned for initial proceedings under Federal Rule of Criminal Procedure 32.1 on January 22, 2015.  DE #42 (Minute Entry).[1]

---

[1] Because he appeared on a summons, Defendant did not have a matured right to a Rule 32.1 preliminary hearing. The Government did not seek interim detention, and the Court released Sims predicated on a clean drug test, which Sims passed. Thus, as noted, the right to a preliminary hearing never ripened. *See* DE #42 (Minute Entry).  The Court, upon referral from the District Judge, thus set and conducted a final hearing. Sims validly stipulated to the content of the Report, and the Court offered the parties the opportunity to present any proof and make any argument concerning the proper disposition of the matter. The Court also expressly informed Defendant of his right of allocution before the District Judge.

At a final hearing, Defendant competently entered a knowing, voluntary, and intelligent stipulation to all of the charges (as contained within the Report), after the Court afforded Sims all rights due under Rule 32.1 and 18 U.S.C. § 3583. The parties presented a specific recommendation to the Court. Defendant allocuted, and USPO Key spoke in open court without objection.

The Report alleges that, on December 4, 2014, Sims submitted a urine sample that tested positive for marijuana and cocaine, as confirmed by Alere Laboratories. Sims submitted to a second drug test on December 18, 2014, which tested positive for marijuana, cocaine, and morphine. Again, Alere Laboratories confirmed the test result. Additionally, the Report charges that use of any of the substances (marijuana, cocaine, or morphine) is the legal equivalent of possession, and thus, on this record, felony conduct.

At the final Rule 32.1 hearing, Sims validly stipulated to all of the violations. The conduct confessed would violate the Judgment's restriction against controlled substance use and committing additional crime. DE #28 (Judgment). Defendant accepted responsibility at the final hearing and stipulated that, in the supervised-release context, each violation occurred as described. The stipulation and record, including the lab-verified test results, establish the violative conduct under Rule 32.1 and § 3583.

The Court has evaluated the full record, including the original conviction, the Presentence Investigation Report, and the Violation Report. The Court has considered all of the § 3553 factors imported into the § 3583(e)(3) analysis.

Under § 3583, a defendant's maximum penalty for a supervised release violation[2] hinges on the gravity of the underlying offense of conviction. Sims's § 922 conviction was for a Class C felony. 21 U.S.C. § 924(a)(2); 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two (2) years of imprisonment. 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *United States v. Perez-Arellano*, 212 F. App'x. 436, 438-39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1(a)(2), the nature of Defendant's admitted conduct would qualify as a Grade B violation.[3] With a criminal history category of VI (the category at the time of the conviction) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is 21-24 months (with the statutory max becoming the Guidelines ceiling).

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release

---

[2] The proof standard is a preponderance of the evidence, *see* 18 U.S.C. § 3583(e)(3), which Defendant's stipulation and the proffered corroborating evidence (including the USPO Report indicating confirmed lab results) obviously satisfy.

[3] This is because the Sixth Circuit deems use the equivalent of possession. *United States v. Metcalf*, 292 Fed. App'x 447, 450 n.2 (6th Cir. 2008) (citing *United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995)). Marijuana, cocaine, or morphine possession under § 844(a) would be a felony given Sims's prior Trafficking in a Controlled Substance First-Degree conviction (Fayette Circuit Court, 2008).

authorized by statute for the offense that resulted in the original term of supervised release." 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *Id.* § 3583(b). In this instance, the potential reimposed supervised release term is not more than 3 years, less any term of incarceration imposed upon revocation. *See* 18 U.S.C. § 3583(b) & (h).

The Court has carefully weighed the nature and circumstances of the offense[4] and Defendant's particular history and characteristics. Sims now fully admits to repeated improper use of controlled substances during his term of supervised release. Indeed, despite knowledge of the first positive drug test and his violation status, Sims used controlled substances again.

The parties and USPO Key spoke candidly in open court. Defense counsel highlighted Defendant's newly-secured employment at Pizza Hut, his desire to continue pursuing online college courses, as supported by an email tendered to the Court, and a proffer regarding ongoing monetary support of his out-of-state children. Counsel further noted Sims's responsiveness to USPO Key and counsel. AUSA Hawkins, on behalf of the United States, noted that the recent positive tests cannot be considered in a vacuum but must be viewed relative to Sims's overall criminal history and pattern of behavior. Per the Government, Sims's strides toward maintaining a stable residence, working, and being a productive and law-abiding citizen are worth a second chance, despite his overall negative record. Ms. Hawkins prosecuted Sims and sees much

---

[4] The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). This observation does not detract from but rather shapes the Court's analysis of the statutory factor encompassing offense conduct.

progress in him between 2010 and now. USPO Key aptly described Sims's situation as a "crossroads," noting that now is the time to invest in him. Per Key, Sims has formally reached out for substance abuse treatment. USPO Key believes that, with intervention and some corrective measures, Defendant can become a positive contributor to society.

To be only 29 years old, Defendant's criminal history is astoundingly bad. It reflects involvement with drugs and guns from an early age. When he received the charge[5] underlying the current conviction, he had been on state probation for a drug felony for less than 2 weeks. Further, upon his initial state arrest and booking, Defendant escaped from the detention center. Marijuana, cocaine, and firearms have pervaded Defendant's life to date. Sims's continued involvement with drugs needs attention, and his violative conduct warrants correction. Certainly, it would be easy (and likely justified) to revoke Defendant for a significant period of time. Notwithstanding his history, however, both parties and the USPO seek to provide Sims a second chance and more significant treatment opportunity. In light of all of the circumstances, the Court does find limited revocation[6] warranted on the terms stated herein. The Court hopes that the combination of revocation, while enabling Sims to remain employed and seek treatment, while further being

---

[5] The Commonwealth initially charged Sims but dismissed the case in lieu of federal prosecution.
[6] There is some conceptual awkwardness to calling this a true revocation. The Court does so, however, for a couple of reasons. First, the Court is imposing a defined term of custody as a result of Sims's violative conduct—6 weekends in jail, spread over a 90-day home detention term. The Court is spreading the time only as an effort to support Sims's employment opportunities. Further, the statute requires revocation for drug possession (and the Guidelines require revocation for a Grade B violation). The rub may be over whether this term truly equates to a term of imprisonment, per § 3583, but the Guidelines do, in part, treat a home detention or intermittent confinement element of supervised release as satisfying part of a "term of imprisonment." The odd § 3563(b)(10) predicates for intermittent confinement within supervised release (versus probation) also influence this decision. Ultimately, the difference, if any, is semantic on this record and given the particular result the parties have advocated for and the Court has imposed.

subject to tighter strictures of oversight, will steer him away from further criminal conduct and toward a lawful, productive, and positive life. Everyone sees something positive to build on in Sims—this is his chance to make good on the perception.

Per the USPO Report, and Defendant's own admissions, the Court, therefore, finds that Sims has violated two separate conditions of supervised release for a total of four violative acts.

The Court recommends, based on the violations found:

1. Revocation[7] and incarceration for **6 weekends** in jail, with service to occur **within the next 90 days**.

2. Defendant shall be on home detention for the next **90 days**, at the address known and approved by the USPO. Defendant shall be on electronic location monitoring throughout the duration of the home detention, paid for by the USPO and in a monitoring form the USPO deems appropriate. Defendant may leave the residence only for approved reasons on a schedule **approved in advance** by the USPO.[8] Defendant may leave the residence only for work (or to look for work), treatment, medical appointments, or other legitimate and constructive personal errands approved in advance by the USPO.

3. Defendant shall maintain or actively seek full-time employment during the home detention period and for the balance of his term of supervised release. The Court encourages Sims to work as much as possible and to seek employment

---

[7] Sims offered nothing that would strictly justify any revocation exception under § 3583(d). The defense did not advocate for an exception from § 3583(g) mandatory detention. The revocation is a limited one, though, as detailed.

[8] For a medical emergency requiring transport to the hospital by ambulance, Sims may leave the

>    opportunities utilizing his masonry skills.
>
> 4. All other terms of supervised released as originally imposed continue to remain in effect.
>
> 5. The USPO shall increase random drug testing. The USPO shall test Sims **at least weekly** during the 90-day home detention period and thereafter at the USPO's discretion.
>
> 6. The USPO shall enroll Defendant in active outpatient substance abuse treatment, at the location and in the manner the USPO deems appropriate. Defendant shall attend treatment at least one time per week (and more if the USPO directs). Defendant must participate in good faith.
>
> 7. Based on the PSR, the USPO shall refer Defendant for a mental health evaluation and ongoing treatment. Defendant must attend and participate in good faith.
>
> 8. Within the 90-day home detention period, Defendant shall perform 20 hours of community service at the site or in the service the USPO deems apt.
>
> 9. The supervision end date shall remain June 5, 2016. The Court sees no need for a term extending beyond the original period; the United States agreed.

After consideration of the entirety of Chapter 7, and applying the binding statutory factors in § 3553, the Court views the recommended sentence as sufficient but not greater than necessary to effectuate and comply with the statute's purposes. The Court carefully took the views of the United States and defense into account in reaching this result, and the combination of some jail, a term of home detention with electronic monitoring, continuing Defendant's term of supervised

---

residence but must contact the USPO as soon as possible to take further direction and guidance.

7

release, and imposing mental health and drug treatment (among other requirements) reflects an effort to correct Defendant's violative (and felony-level) conduct, while allowing him to maintain a sustainable path toward a lawful, rule-following life.

All parties—the USPO, the United States, and defense counsel—expressed hope for Sims's future and a strong desire to see him succeed. The Court is hopeful that Sims's newly gained employment at Pizza Hut, in combination with tighter oversight, will provide him the necessary support structure for success. His history is undoubtedly concerning; it shows a record of continued bad choices, particularly in 2009, and even an upper-end Guidelines sentence by Judge Caldwell. But, in this circumstance, the parties have convinced the Court that Sims is worth the chance and investment. The leniency now shown will likely not return. As noted, the Court easily could have justified a significant prison sentence on these violations and on this record. Instead, the Court chooses to invest the last measure of trust in Sims, with the admonition that he use this opportunity wisely and productively. Sims, who now requests substance abuse treatment and shows a spark of hope, faces a lengthy period of incarceration if he violates again and the undersigned has any role in resolving the matter.

Sims accepted responsibility. On balance, the Court's recommendation recognizes the need for proper corrective action while appropriately empowering Sims to receive treatment (for both drugs and mental health) for which he expressed a desire and that the parties agree would be useful. If Sims whole-heartedly embraces these new conditions, he can succeed long term. The Court trusts and expects that Sims will not squander this (likely) last chance.

Defendant's right of allocation under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, which the Court provided to

defense counsel following the hearing. Absent waiver, the District Judge will set the matter for a hearing to include allocution.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). By agreement, the Court shortened the objection period. **Within 5 days of the date of this recommended decision**, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 29th day of January, 2015.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge